## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re

**OYO SPORTSTOYS, INC,**

**Debtor**

**Chapter 11**

**Case No. _____**

## OYO SPORTSTOYS INC.'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) AUTHORIZING IT TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING REPLACEMENT LIENS, (IV) GRANTING ADEQUATE PROTECTION, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF
### *(Emergency Consideration Requested)*

OYO Sportstoys, Inc. ("**Debtor**" or "**OYO Sports**") hereby file this Motion (the

"**Motion**") pursuant to sections 105(a), 361, 362, 363, 364 and 507 of title 11 of the United

States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of

interim orders on an expedited basis, substantially in the forms attached hereto as Exhibits A and

B (the "**Interim Orders**"), and final orders (the "**Final Orders**" and together with the Interim

Orders, the "**DIP Orders**"), (i) authorizing OYO Sports to (a) enter into a postpetition factoring

and financing arrangement on an interim and final basis on the terms as set forth in the interim

order attached as Exhibit A and in the "*Purchase and Sale Agreement*" between LC and OYO

Sports dated August 5, 2016 (attached as Exhibit C), as amended by amendment dated August

12, 2016 (attached as Exhibit D), and as modified as of the Petition Date (attached as Exhibit E,

and collectively, the "**Agreement**") with Liquid Capital Exchange, Inc. ("**LC**"), (b) enter into a

postpetition financing arrangement with Martin Hanssmann ("**Hanssmann**"), an officer and

shareholder of OYO Sports, on the terms and conditions set forth in the "*Loan Agreement*" dated July 11, 2017 attached as Exhibit F, and the accompanying "*Promissory Note*" attached as Exhibit G and "*Security Agreement*" attached as Exhibit H (collectively, Exhibits F-H referred to as the "**Hanssmann Loan Documents**"), (c) enter the order attached as Exhibit J, and authorize OYO Sports to obtain credit, on an unsecured administrative expense basis, from Darryl McKay, an employee of OYO Sports who will make purchases for OYO Sports on his personal credit card; (d) use Cash Collateral (as defined herein), (ii) granting replacement liens to LC and Mr. Hanssmann respectively, (iii) granting adequate protection to  LC and Mr. Hanssmann respectively with respect to the use of the Cash Collateral and any diminution in the value of their interests in the prepetition collateral, including Cash Collateral, (iv) scheduling a final hearing pursuant to Bankruptcy Rule 4001, and (v) granting related relief.  In support of this Motion, the Debtor relies on the *Declaration of Thomas Skripps* ("**Skripps Dec.**") filed contemporaneously with this Motion and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The relief sought in the Motion is necessary and in the best interests of OYO Sports's estate in order to prevent immediate and irreparable harm to OYO Sports's estate that would result in the absence of the proposed financing.  OYO Sports believes that without the proposed financing, OYO Sports will not have the cash necessary to fund these chapter 11 cases or pay for services and expenses necessary to preserve and maximize the value of OYO Sports's business while OYO Sports seeks to effectuate a restructuring pursuant to a chapter 11 plan in this case.  OYO Sports believes that its contemplated plan, if confirmed, will maximize the recovery for creditors in this bankruptcy case.  OYO Sports negotiated the financing for which

approval is requested in this Motion to provide it with much-needed capital and liquidity during

this chapter 11 case.

2.       For these reasons as expanded on below, OYO Sports requests that the Court

enter the proposed DIP Orders.

**CONCISE STATEMENTS PURSUANT TO BANKRUPTCY RULE 4001**

3.       **Obtaining Credit**.  OYO Sports seeks approval of three complementary

postpetition financing arrangements – a postpetition factoring arrangement that essentially

permits OYO Sports to continue its prepetition factoring arrangement with LC during the

postpetition period, postpetition secured financing from Mr. Hanssmann that provides OYO

Sports with liquidity needed to fund professional fees and other expenses and postpetition

unsecured credit from Darryl McKay, an employee of OYO Sports, who will use his personal

credit card to buy materials for OYO Sports to use to manufacture its products.  LC and Mr.

Hanssmann (the "**DIP Lenders**") also will be granted postpetition liens on the same assets on

which they enjoy a prepetition lien – essentially a lien on all of OYO Sports's assets.  LC's lien

will be a first priority lien.  Mr. Hanssmann's lien will junior only to the lien to LC.  As required

by Bankruptcy Rule 4001(c) and MLBR 4001-2(a), the following is a summary of the material

terms of the DIP Lenders' proposed financing:

| MATERIAL TERMS (LC) | SUMMARY OF TERMS |
|---|---|
| **Borrower**: | OYO Sports. |
| **Cost** (*Exhibit E*) | a. Initial Rate    3.5%<br><br>b. Initial Rate Period   30 Days<br><br>c. Further Rate    1/10 of 1% |

| | d. Further Rate Period   0 Days |
|---|---|
| **DIP Lender:** | LC. |
| **DIP Loan Amount:** *(Exhibit C, ¶¶ 1-2)* | At LC's discretion, LC will purchase from OYO Sports, and OYO Sports will sell to LC, all of OYO Sports's postpetition accounts receivable, on the terms and conditions set forth in Agreement up to a maximum amount of $2,000,000. |
| **Use of Proceeds:** | OYO Sports will use the proceeds of the factoring to pay, *inter alia*, working capital and operational expenses, and case administration costs reflected on the Budget. |
| **Maturity** *(Exhibit C, ¶18)* | Agreement shall continue in full force and effect for as long as a balance is owed to Secured Party by OYO Sports; either party may terminate at any time by giving thirty (30) days prior written notice. |
| **Events of Default** *(Exhibit C, ¶11, Exhibit A, ¶II. N):* | Customary events of default identified in paragraph 11 of Exhibit C. Pursuant to proposed Interim Order (Exhibit A, II ¶N), "[t]o the extent that any provision of the Agreement shall cause [OYO Sports] to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by [LC]." |
| ***Additional Disclosures Required by MLBR 4001-2(a)*** | a.       Total Dollar Amount of Financing – exact amount unknown and will be a percentage of accounts receivable generated and factored in postpetition period.<br><br>b.       Budget for use of funds – See budget attached as Exhibit I (the "**Budget**").<br><br>c.       Reason to believe Budget is adequate re administrative expenses:  OYO Sports believes the Budget is adequate to pay all administrative expenses that become due and payable during the Budget period.  Accrued administrative expenses due and payable after the Budget period will be addressed in future budgets.<br><br>d.       Amount of debt owed to LC as of the Petition Date: $397,942, without offset for reserve of $103,361. |

| | |
|---|---|
| | e.      Carveout:  All claims, administrative expenses and liens of LC shall be subject to professional fees and expenses of OYO Sports and Committee.<br><br>e.      Value of Collateral:  unknown, but believed to exceed amounts owed to LC materially. |
| **Priority and Liens/ Ranking/Security /Collateral:**<br>***Exhibit C, ¶6, Exhibit A, ¶¶ E, G*** | LC will be granted a postpetition lien to secure amounts owed to it pursuant to the Factoring Agreement on the same collateral on which it has a prepetition security interest, *i.e.*, all of OYO Sports's right, title and interest in and to the following, whether now existing or hereafter arising or acquired and wherever located:  (a) Account, (b) Chattel Paper, (c) Commercial Tort Claims, (d) Deposit Accounts, (e) Documents, (f) Equipment, (g) General Intangibles, (h) Goods, (i) Instruments, (j) Inventory, (k) Investment Property, (l) Supporting Obligations, (m) Letter of Credit Rights, (n) Payment Intangibles, (o) any and all Reserves and all payment (if any) due or to become due to OYO Sports from the Reserves as well as all monies on deposit, holdbacks and credits under the Agreement, (p) all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists, and (q) all Proceeds of the foregoing (the "**DIP Collateral**").<br><br>**Priority:** LC's liens "shall be senior to the claim of any entity now or hereafter claiming an interest in the [DIP Collateral], but subject and junior to claims for professional fees and expenses of [OYO Sports] and the Committee which shall have priority over [LC's] liens and security interests.  LC's claims "shall constitute a super-priority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code, which shall be deemed allowed, without any further filing by Secured Party, and which shall have priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, except for claims for professional fees and expenses of [OYO Sports] and the Committee which shall have priority over the claims and expenses and over the superpriority administrative expense claim awarded to [LC]." |
| **Provisions of Proposed Order Subject to MLBR 4000-2 (c) and (d)** | a.  Paragraph I. J (MLBR 4001-2(c)(2))<br><br>b.  Paragraph II. F. (MLBR 4001-2(c)(12))<br><br>c.  Paragraph II. G. (MLBR 4001-2(c)(2)) |

|  |  |
| --- | --- |
| | d.  Paragraph II. H. (MLBR 4001(2)(c)(1), (6)) |
| | e.  Paragraph II. Q. (MLBR 4001(2)(c)(5)) |
| | f.  Paragraph II. T. (MLBR 4001(2)(c)(4)) |
| | g.  Paragraph II. W. (MLBR 4001(2)(c)(4)) |
| | h.  Paragraph II. Y (MLBR 4001(2)(c)(2)) |

| MATERIAL TERMS (Mr. Hanssmann) | SUMMARY OF TERMS |
| --- | --- |
| **Borrower**: | OYO Sports. |
| **DIP Lender:** | Mr. Hanssmann. |
| **DIP Loan Amount:** *Exhibit F, §2.01* | Mr. Hanssmann will make loans to OYO Sports from time to time in an aggregate principal amount not to exceed at any time outstanding $150,000. |
| **Use of Proceeds**: *Exhibit F, §2.02* | All disbursement shall be disbursed to [OYO Sports] in the form of either cash or expenses paid on [OYO Sports's] behalf on Lender's credit card as follows.  [OYO Sports] shall notify Lender of its desire to borrow funds remaining . . . in writing and such notice shall include a description of the proposed use of the funds, or the items to be charged on [OYO Sports's] behalf on Lender's credit card.  Upon review and approval by the Lender it shall disburse the requested funds in the desired form hereunder."  Additionally, Mr. Hanssmann shall disburse the sum of $50,000 in cash to fund counsel for OYO Sports's retainer (subject to Court approval).  Of this amount, $25,000 shall be disbursed immediately prior to the filing by OYO Sports of its voluntary bankruptcy petition and the remaining $25,000 shall be disbursed directly to counsel for OYO Sports no later than the 21st day following the filing of OYO Sports's bankruptcy petition. |
| **_Additional Disclosures Required by MLBR 4001-2(a)_** | a.      Total Dollar Amount of Financing – Mr. Hanssmann will use his personal credit cards to make purchases for OYO Sports, which will increase his net balance on his credit cards for OYO |

6

| | |
|---|---|
| | Sports's benefit by an estimated $39,221 – see description in paragraph ____ below.<br><br>b.      Budget for use of funds – See budget attached as Exhibit I (the "**Budget**").<br><br>c.      Amount of debt owed to Mr. Hanssmann as of the Petition Date:  $118,826.64 (secured) and $78,548.82 (unsecured)<br><br>d.      Value of Collateral:  unknown.<br><br>e.      Carve-out:  All claims and liens of Mr. Hanssmann shall be subject to professional fees of OYO Sports and Committee. |
| **Priority and  Liens/ Ranking/Security /Collateral:** *Exhibit B, ¶¶ E, G* | Mr. Hanssmann will be granted a postpetition lien to secure amounts owed to him for funds advanced or purchases on his personal credit card from and after the Petition Date.<br><br>**Priority:** Mr. Hanssmann's liens "shall be senior to the claim of any entity now or hereafter claiming an interest in the DIP Collateral except for LC, and shall be junior to LC's liens and security interests and subject and junior to claims for professional fees and expenses of [OYO Sports] and the Committee which shall have priority over the [Mr. Hanssmann's] liens and security interests.  Mr. Hanssmann's claims shall constitute a super-priority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code, which shall be deemed allowed, without any further filing by Secured Party, and which shall have priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, except for (i) superorpriority claims awarded to LC pursuant to the DIP Orders, and (ii) claims for professional fees and expenses of OYO Sports and the Committee which shall have priority over the claims and expenses and over the administrative expense claim awarded to Mr. Hanssmann pursuant to the DIP Orders. |
| **Cost of Financing** *Exhibit F, §2.03* | 15% |
| **Provisions of Proposed Order Subject to MLBR 4000-2 (c) and (d)** | a.    Paragraph I. I (MLBR 4001-2(c)(2))<br><br>b.    Paragraph II. F. (MLBR 4001-2(c)(12)) |

|  |  |
| --- | --- |
|  | c.   Paragraph II. G. (MLBR 4001-2(c)(2)) |
|  | d.   Paragraph II. J. (MLBR 4001-2(c)(1)) |
|  | e.   Paragraph II. Q. (MLBR 4001(2)(c)(5)) |
|  | f.   Paragraph II. T. (MLBR 4001(2)(c)(4)) |
|  | g.   Paragraph II. W. (MLBR 4001(2)(c)(4)) |
|  | h.   Paragraph II. Y (MLBR 4001(2)(c)(2)) |

| MATERIAL TERMS (Mr. McKay) | SUMMARY OF TERMS |
| --- | --- |
| **Borrower**: | OYO Sports. |
| **DIP Lender:** | Mr. McKay. |
| **DIP Loan Amount:** | Mr. McKay will continue to use his personal credit cards to finance OYO Sports's purchases of raw materials. |
| **Use of Proceeds:** | Purchases |
| **Priority and  Liens/ Ranking/Security /Collateral:** *Exhibit B, ¶¶ E, G* | Unsecured administrative expense |
| **Cost of Financing** *Exhibit F, §2.03* | N/A – payments in Budget to maintain availability under credit card |
| ***Additional Disclosures Required by MLBR 4001-2(a)*** | a.       Total Dollar Amount of Financing – Mr. McKay will use his personal credit cards to make purchases for OYO Sports, which will increase his net balance on his credit cards for OYO Sports's benefit by an estimated $26,000 – see description in paragraphs ___ below.<br><br>b.       Budget for use of funds – See budget attached as Exhibit I (the "**Budget**").<br><br>c.       Amount of debt owed to Mr. Hanssmann as of the Petition Date:  78,400.43 (unsecured). |

|  | d.      Value of Collateral:  N/A |
|--|--|

4.      **Use of Cash Collateral**.  As required by Bankruptcy Rule 4001(b) and MLBR 4001-2(a), the following is a summary of the material terms regarding the Debtors' use of Cash Collateral:

| MATERIAL TERMS | SUMMARY OF CASH COLLATERAL USEAGE |
|--|--|
| **Names of Each Entity with an Interest in Cash Collateral**: | 1.      OYO Sports<br><br>2.      LC<br><br>3.      Mr. Hanssmann |
| **Purpose for the Use of Cash Collateral:** | Cash Collateral be utilized to pay, inter alia, working capital and operational expenses, and case administration costs reflected on Budget. |
| **Duration for Use of Cash Collateral:** | Indefinite. |
| **Adequate Protection for LC and Mr. Hanssmann:** | Postpetition liens to LC and Mr. Hanssmann, as set forth above, subject to claims for professional fees and expenses of OYO Sports and the Committee which shall have priority over the claims, liens and administrative expense claim awarded to LC and Mr. Hanssmann pursuant to the DIP Orders. |

## JURISDICTION

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory bases for the relief requested herein are sections 105(a), 361, 362, 363, 364 and 507 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## OYO Sports' Business

### A.  Background

1.     OYO Sports is a corporation organized under the laws of the State of Delaware with its principal places of business in Hudson, Massachusetts.  OYO Sports is a leading fan engagement company in the sports consumer marketplace, targeting the youth, fan and collector markets with both physical and digital toy products.  OYO Sports creates buildable minifigures that are designed as the replica of athletes, with facial and uniform representation of their real life counterparts of major professional sports teams such as Major League Baseball, National Football League, National Basketball Association and over 60 major colleges and universities and more.  Each OYO Sports minifigure comes with his own stand and unique DNA number, as well as rotating arms, bending knees, and the ability to hold a bat, stick, glove and ball.

2.     OYO Sports is owned by Oyotoyo which owns 100% of the outstanding stock of OYO Sports.  Oyotoyo, in turn, is owned by approximately 31 shareholders holding various amounts of different classes of preferred and common stock.

3.     The Debtors historically have operated as a combined entity, with all of the Debtors' combined business activities performed by OYO Sports.  Oyotoyo has no operations.  Oyotoyo, however, is the licensee under various trademark and similar licenses with various professional sports leagues and players associations ("**Licenses**").  OYO Sports manufactures toys bearing the likenesses of professional athletes pursuant to those Licenses.  Most of the

Licenses are unexpired as of the Oyotoyo Petition Date.  Other than a claim for professional

services owed to a law firm, and monies owed to an insider and another third party (in the

aggregate approximately $87,500) for monies advanced, Oyotoyo has no known liabilities to

non-insiders other than for monies owed to the licensors under the Licenses.  Similarly, Oyotoyo

has no known assets other than (i) a bank account with approximately $300, and (ii) its interests

in the Licenses and an intercompany claim against OYO Sports for monies advanced from time

to time to OYO Sports to support OYO Sports' operations in an amount estimated to be

approximately $2,000,000, and additional amounts for pass-through liabilities for the royalties

due under the Licenses.[1]  In the aggregate, the total amount due from OYO Sports to Oyotoyo as

of the Petition Date is approximately $3,966,634.04.

### B. OYO Sports' Capital Structure

4.      OYO Sports capital structure is relatively straightforward.  On the liability side, in

addition to the intercompany obligation to Oyotoyo referenced above, OYO Sports has sold its

prepetition accounts receivable to its factor (Liquid Capital Exchange, Inc., hereinafter "**LC**"),

and thus has claims from time to time against LC for the unpaid purchase price from LC.  The

basis of the factoring arrangement is set forth in a "*Purchase and Sale Agreement*" between LC

and OYO Sports dated August 5, 2016, as amended by amendment dated August 12, 2016, and

as modified as of the Petition Date (collectively, the "**Agreement**").  A genuine copy of the

Agreement (including the amendment and modification) is attached as **Exhibit C-E** to the "DIP

Motion" (as defined below).  LC has a security interest in substantially all of OYO Sports' assets

to secure amounts owed to it under the Agreement.  Under the advance formula in the

---

[1] Although Oyotoyo is the licensee under the Licenses, all of the operations occur at the OYO Sports level, and thus OYO Sports is the source of payment of all royalty payments made to the licensees under the Licenses.

Agreement as modified, LC will advance to OYO Sports on account of the purchase price for postpetition receivables an amount equal to 80% of the face amount of the receivable, less LC's fee of 3.5%, resulting in an initial advance to OYO Sports of 76.5% of the face amount of the receivable. LC holds 20% of the receivable in a reserve, pending collection of the receivable. LC holds this reserve to protect itself in the event a customer fails to pay timely on account of a factored receivable. LC makes a further advance of the 20% held back and held in reserve if the customer pays the receivable in full and timely.

5.      This arrangement results in amounts owed to LC (representing 80% of the face amount of uncollected receivables), and also amount due to OYO Sports from LC (representing the 20% held in reserve and paid upon receipt by LC of the full amount of each factored account receivable). Subject to final reconciliation, As of the Petition Date, OYO Sports was indebted to the LC in the amount of $486,179.23, the face amount of accounts purchased by LC from OYO Sports, less OYO Sports's adjusted reserves, which totaled $97,443.22 as of the Petition Date, and less any amounts subsequently collected LC, plus fees and costs as provided by the Agreement (as reconciled, the "**Pre-Petition Obligation**").

6.      As noted below, OYO Sports also is obligated to Mr. Martin Hanssmann, an officer of OYO Sports and a shareholder of Oyotoyo, both for prepetition secured and unsecured debts. Prior to the Petition Date, Mr. Hanssmann made a secured loan to OYO Sports up to the amount of $150,000, secured by a security interest in substantially all of OYO Sports's assets, junior only to the security interest granted to LC. Mr. Hanssmann also intends, subject to approval of this Court, to advance further sums to OYO Sports subject to a postpetition lien, all as set forth in the DIP Motion and below. As of the Petition Date, Mr. Hanssmann has advanced

the principal sum of $118,826.64 from and after July 11, 2017 (the date of execution of the

Hanssmann Loan Documents) to OYO Sports

7.      In addition, Mr. Hanssmann allowed OYO Sports to make purchases on his

personal credit cards on an unsecured basis prior to the execution of the Hanssmann Loan

Documents.  OYO Sports owes Mr. Hanssmann 78,548.82 as an unsecured debt for

reimbursement for charges on his personal credit cards for OYO Sports's benefit,

8.      On the asset side, in addition to the amounts in the LC reserve, OYO Sports also

has on its books approximately $1,344,000 of inventory as of the Petition Date in the form of

raw materials (inclusive of bulk molded parts and bagged sets) and finished goods. The finished

goods value includes the raw material and labor used to produce the products.  OYO Sports has

the furniture, fixtures and equipment it uses in its operations and potential claims against third

parties.  By far the Debtors' most significant assets, however, is their combined goodwill and the

value of Oyotoyo's interests as licensee under the Licenses.

### C.  The Circumstances Leading to the Filing of These Cases

9.      The Debtors filed their cases because of debts they incurred that were associated

with a failed private equity transaction.  In 2014, OYO Sports was growing rapidly and was

experiencing exceptionally favorable responses and increased demand for its products from its

customers.  OYO Sports required substantial capital quickly to finance this growth surge to scale

its business to meet this increased demand.  To raise funds needed to finance this growth, OYO

Sports issued a controlling block of equity to a group of private equity investors.  That

transaction ultimately was a failure.  Although OYO Sports incurred substantial equipment lease

and other debt obligations to ramp up its operations, OYO Sports never achieved the level of

sales necessary to support this newly incurred overhead.  Moreover, the transaction resulted in

operational missteps.  For example, shortly after the closing of the private equity transaction, the

private equity firms demanded that Thomas Skripps resign as President of OYO Sports.  The

private equity firms struggled with securing competent and focused new management.

Accordingly, throughout 2015, OYO Sports struggled and continued to incur substantial debts

and overhead.  In 2016, the equity firms wanted to exit the transaction.  The equity firms and Mr.

Skripps agreed that the new investors and Mr. Skripps would reacquire OYO Sports.  Through a

complicated transaction, Oyotoyo acquired OYO Sports in April 2016, and the new investors

(the so-called "Series B" preferred shareholders of Oyotoyo) and I reacquired control of the

Debtors.

10.     After the new investors and Mr. Skripps reacquired OYO Sports, it achieved

immediate success and enjoyed positive EBIDTA in the fourth quarter of 2016.  However, a new

problem arose - a severe down-turn in the retail environment, starting in February 2017, that left

OYO Sports with reduced sales volume and struggling to cover its current overhead based on its

reduced sales volume.

11.     The Debtors have filed their respective bankruptcy cases to address their debts

and restructure their financial affairs.   OYO Sports began prior to the Petition Date, and intends

to continue, efforts to significantly reduce overhead, and believes it now has achieved both

profitability and positive EBITDA from its operations.  OYO Sports has moved to a new, smaller

location in Hudson, Massachusetts that has reduced its monthly rent expenditure from

approximately $70,000 to approximately $6850 in base rent and approximately $4000 per month

in common area maintenance, taxes and similar charges.  OYO Sports has moved the equipment

it needs for continued operations to its new location.  OYO Sports is in active discussions with

strategic partners to provide exit liquidity and financing.  The Debtors anticipate they will be in a

14

position to file and seek confirmation of a feasible chapter 11 plan upon the conclusion of these discussions.

## NEED FOR DIP FINANCING AND USE OF CASH COLLATERAL

### A.  Current Financial Challenges; Critical Need for Financing

12.     OYO Sports is operating under severe financial and operational distress that threatens its ability to maintain operations.  Put simply, OYO Sports currently is in a state of crisis.  OYO Sports is out of cash and needs liquidity to survive and restructure its affairs.  OYO Sports believes its new overhead structure will enable it to maintain positive EBITDA and profitability going forward.  Indeed, the profits OYO Sports believes it will generate, together with exit financing OYO Sports believes it can obtain, will be used by OYO Sports to produce a meaningful distribution to holders of allowed claims in this case.  It needs cash now, however, to "prime the pump" before revenues from operations and LC are received.  Without the infusion of new operating capital to fund operations and professional expenses of this Chapter 11 case, OYO Sports may not survive and this case is at risk of conversion to chapter 7.  Conversion would be a tragedy and will likely result in substantial loss of value, resulting in creditors receiving little, if any, recovery.

### B.  The Proposed Financing Transactions

13.     OYO Sports engaged in good faith negotiations with LC, Mr. Hanssmann and Mr. McKay to produce the postpetition liquidity facilities that are the subject of this Motion.  The complementary postpetition financing transactions are intended to provide OYO Sports with sufficient liquidity to execute the necessary "pump priming" and ensure OYO Sports retains the prospects of preserving its value for its bankruptcy estate.  The LC factoring will provide OYO Sports will sufficient liquidity to enable it to fund its ongoing operations.  The postpetition

15

financing from Mr. Hanssmann will enable to the Debtors to fund a portion of the anticipated professional and other administrative fees required in this case.  The Budget describes the sources and uses of cash during the 13 days following the Petition Date.

### a.   *The LC Proposed Financing*

14.     The financing with LC essentially contemplates the continued factoring of postpetition receivables pursuant to the Agreement, on substantially the same terms and conditions as existed prior to the Petition Date.  OYO Sports will sell accounts receivable to LC, LC will advance funds on account of the receivables sold to LC (80% of the face amount of the receivables, less its fee), LC's fee be increased from three percent (3%) prepetition to 3.5% postpetition, and LC will hold back a reserve.

15.     The Budget shows the amounts OYO Sports anticipates the amount of the accounts receivable that will be sold to LC during the Budget period, the amount of advances, and other details regarding the financial impact of the proposed factoring.  As demonstrated in the Budget, the LC financing is critical to OYO Sports, and provides OYO Sports with needed liquidity during the Budget period.

### b.   *The Proposed Funding from Mr. Hanssmann*

16.     With respect to Mr. Hanssmann, prior to the Petition Date, Mr. Hanssmann (i) provided OYO Sports with the use of his personal credit card, make payments to suppliers and other vendors necessary to maintain OYO Sports's operations, and (ii) a prepetition secured loan, based on a combination of cash advances and use of his credit card. As of the Petition Date, Mr. Hanssmann had advanced the principal amount of 118,826.64 on his secured loan, and had an unsecured claim of 78,548.82 for other amounts incurred on his personal credit card for the benefit of OYO Sports.  Prior to the Petition Date, OYO Sports from time to time made

16

payments on account of those credit cards.  As of the Petition Date, the total amount owed to Mr.

Hanssmann on account of his credit card purchases for OYO Sports was $96,025.46.  Of this

amount, $78,548.82 was unsecured, and treated as an employee expense, and the remaining

$17,476.64 was part of the aforementioned secured loan.  The secured loan is pursuant to a

secured financing arrangement between Mr. Hanssmann and OYO Sports that was dated as of

July 11, 2017.[2]  The total amount available under Mr. Haussmann's secured loan to OYO Sports

is $150,000, and it is secured by a security interest in substantially all of OYO Sports's assets,

junior only to the security interest granted to LC. As noted above, as of the Petition Date, Mr.

Hanssmann had advanced the principal amount of 118,826.64 on his secured loan t to OYO

Sports, comprised of the following:

| Date of Disbursement | Amount | Use of Funds |
|---|---:|---|
| 7/11/2017 | 12,000.00 | Payment of Oyotoyo's filing and lawyer fees |
| 7/12/2017 | 29,000.00 | Funding for payroll for week ending 7.14.17 |
| 7/14/2017 | 1,000.00 | Payment to Seb for work done 7.14.17 re: office move |
| 7/14/2017 | 3,700.00 | Payment of Unique invoice regarding mold shipment |
| 7/26/2017 | 20,650.00 | Rent and security deposit for Hudson office |
| 7/26/2017 | 25,000.00 | Payment for Oyo Sports filing and lawyer fees |
| | 7,476.64 | Purchases on credit card for Oyo Sports |
| | 20,000.00 | Miscellaneous Advances prior to petition date |
| | 118,826.64 | |

17.     Mr. Hanssmann also intends, subject to approval of this Court, to advance further

sums to OYO Sports subject to a postpetition lien.  Pursuant to the Hanssmann Loan Documents,

---

[2] These secured credit card purchases were made after July 11, and are as follows:

| | | |
|---|---|---:|
| 7/11/2017 | Record Martin H's July expenses to Date | 1,513.73 |
| 7/11/2017 | Payment to Superior on Martin's CC 7/19/17 | 3,635.92 |
| 7/11/2017 | Payment to Butler Dearden on Martin's CC 7.24.17 | 479.71 |
| 7/11/2017 | Martin's H's July credit card charges #2 | 1,847.28 |
| | | 7,476.64 |

the advances either will be in the form of cash advances or by using Mr. Hanssmann's personal

credit card.  Pursuant to the Budget, during the budget period, OYO Sports intends to pay to Mr.

Hanssmann the sum of $51,779 for application to interest and principal due on his personal credit

cards used for OYO Sports's benefit, and in return will obtain additional secured financing of in

the form of new purchases on his credit card of approximately $91,000.  More importantly, OYO

Sports obtains the use of his credit card, which provides an additional source of financing.  As

set forth in the Budget, OYO Sports lacks the cash to fund the necessary purchases without using

the credit Mr. Hanssmann is making available.

c.   ***The Proposed Continued Use of Additional Amounts on Mr. McKay's Credit Card***

18.     With respect to Mr. McKay, OYO Sports also relies on the use of Mr. McKay's

credit card to purchase needed materials and for other operating expenses.  As of the Petition

Date, OYO Sports's books and records indicate that Mr. McKay was owed the sum of

$78,400.43 for the purchases made for OYO Sports's behalf on his personal credit card.  Mr.

McKay is prepared to continue allowing OYO Sports to have access to the credit available under

his personal credit cards.  As set forth in the Budget, during the budget period OYO Sports

intends to pay to Mr. McKay the sum of $75,000, for application to interest and principal due on

his personal credit cards used for OYO Sports's benefit, and in return OYO Sports will obtain

additional unsecured financing in the amount of $91,000.  This credit will be in the form of

continued usage of Mr. McKay's personal credit card, which, as with the use of Mr.

Hanssmann's credit card, provides a critical source of liquidity in the first 90 days of OYO

Sports's bankruptcy case.

## RELIEF REQUESTED

19.     By this Motion, OYO Sports is seeking, without limitation:

(a)     authorization to continue performing its obligations under the Agreement and to perform such other and further acts as may be required in connection with the Agreement and the Hanssmann Loan Documents;

(b)     authorization to use the proceeds of the LC, Hanssman and McKay financings and any and all cash collateral (as that term is defined in Bankruptcy Code section 363(a)) in accordance with the Budget;

(c)     authorization to grant LC and Mr. Hanssmann respectively the liens on the DIP Collateral described above;

(d)     authorization to grant adequate protection to the LC and Mr. Hanssmann;

(e)     modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of the Agreement and the Hanssmann Loan Documents;

(f)     to schedule a preliminary hearing on this Motion and obtain authorization, from the entry of the Interim Order until the Final Hearing, to factor receivables to LC pursuant to the Factoring Agreement and to obtain credit from Mr. Hanssmann under the terms contained in the applicable agreements, and to utilize Cash Collateral to the extent necessary to avoid immediate and irreparable harm to OYO Sports's estate; and

(g)     to schedule a Final Hearing on this Motion to consider entry of the Final Order authorizing OYO Sports to borrow the balance of the Hanssmann postpetition loan and to continue factoring its receivables with LC on a final basis.

## SUPPORTING AUTHORITY

20. Approval of the Agreement and the Hanssmann Loan Documents (collectively, the "**DIP Agreements**") will afford OYO Sports an opportunity to survive, to preserve the value of its estate and move forward with this case to formulate and seek confirmation of a chapter 11 plan.

A. **OYO Sports Satisfies the Requirements for Obtaining Secured Postpetition Financing Pursuant to Bankruptcy Code Section 364(c).**

19

21.     OYO Sports proposes to obtain financing under the DIP Agreements by providing security interests and other liens as set forth above pursuant to section 364(c) of the Bankruptcy Code.  To obtain postpetition secured credit, the statute requires a court to find, among other things, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of the [the Bankruptcy Code]." 11 U.S.C. § 364(c).

22.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c). Specifically, courts look to whether:

> (a)     the debtor is unable to obtain unsecured credit under Bankruptcy Code § 364(b), *i.e.*, by allowing the postpetition lender only an unsecured administrative claim;
>
> (b)     the credit transaction is necessary to preserve the assets of the estate; and
>
> (c)     the terms of the transaction are fair an, reasonable, given the circumstances of the debtor/borrower and the proposed lender.

See e.g. In re L.A. Dodgers LLC, 457 B.R. at 3126.  The DIP Loan satisfies each of these three requirements.

### *OYO Sports Cannot Obtain Unsecured Financing*

23.     First, OYO Sports is unable to obtain, on an unsecured general administrative priority basis, a loan of the magnitude needed cover its needs.  As set forth in the Skripps Dec., OYO Sports has no assets, other than its accounts receivable, on which any commercial lender was prepared to lend the amounts necessary to fund operations as set forth in the Budget. Moreover, any new lender would demand a "priming lien" over the prepetition security interest granted to LC.  It is not obvious that OYO Sports can satisfy the requirements of section 364(d) to obtain this Court's approval of any such priming lien, particularly with respect to the

20

requirement that LC's prepetition security interest be provided with adequate protection pursuant

to Bankruptcy Code section 364(d)(1)(B).

*The DIP Agreements are Necessary to Preserve Estate Assets and is an Exercise of OYO
Sports's Sound Business Judgment*

24.     Second, the postpetition financing is needed by OYO Sports to maintain its

operations and preserve its estate.  Absent the postpetition financing from LC, Mr. Hanssmann,

and Mr. McKay, OYO Sports will be unable to satisfy its postpetition obligations.  This will

quickly force OYO Sports into administrative insolvency, where it may have no choice but to

cease operations, close the doors, and convert their Cases to chapter 7.  If this occurs, then any

value that exists in OYO Sports's enterprise will vanish.  Upon liquidation, OYO Sports does not

believe creditors will receive any recovery whatsoever.  In contrast, approval of the DIP

Agreements avoids the irreparable harm to creditors and other constituencies arising from the

immediate termination of operations and accompanying liquidation.

*The DIP Loan is Fair and Reasonable and was Negotiated in Good Faith*

25.     Third, the terms and conditions of the DIP Agreements are fair and reasonable

under the circumstances.

26.     In determining whether the terms of a debtor's proposed postpetition financing

arrangement are fair and reasonable, courts consider the relative circumstances of both the debtor

and the potential lender. See In re Farmland Indus., Inc., 294 B.R. 855, 885-89 (Bankr. W.D.

Mo. 2003) (finding that terms of postpetition financing were reasonable when taken in context

and relative circumstances of the parties were considered).

27.     In this case, OYO Sports simply lacks sufficient funds to operate. The Agreement

essentially continues the prepetition factoring arrangement between OYO Sports and LC, with

the only material difference being the increase in LC's fee from three percent (3%) of factored

receivables to 3.5% of factored receivables, an increase OYO Sports can afford under the

Budget.  Mr. Hanssmann's financing and Mr. McKay's financing (through the use of his

personal credit card) provide OYO Sports with the immediate liquidity it needs to fund a portion

of the administrative costs and professional fees it will incur in this case and for other

miscellaneous expenses for which OYO Sports otherwise lacks the cash to fund.

28.     Conversely, LC, Mr. Hanssmann and Mr. McKay are assuming significant risk in

these postpetition transaction.  If, after the DIP Agreements are executed, and OYO Sports

thereafter is forced to liquidate, it is very possible that there will be insufficient assets to repay all

of them in full.  The receivables purchased by LC may become more difficult to collect if OYO

Sports no longer is in business.  Whatever LC, Mr. Hanssmann, and Mr. McKay might recover

might occur over time and at liquidation and "fire sale" prices.

29.     Considering all of the circumstances, the dire financial circumstances of OYO

Sports, the "lifeline" OYO Sports and its estate will receive upon receiving the postpetition

liquidity from LC and Mr. Hanssmann, and the substantial risk being underwritten, OYO Sports

believes it is fair and reasonable that they should be compensated and protected accordingly.

30.     Furthermore, the various fees and charges associated with obtaining the

postpetition facitilies, are within the range of reasonableness.  The LC fee, while not

inexpensive, nevertheless is affordable as can be seen in the Budget.  Mr. Hanssmann is accruing

his 15% fee on his postepetition secured loan under the Hanssmann Loan Documents.  Mr.

Hanssmann, like Mr. McKay, are only receiving funds on a "pass-through" basis to pay the

respective credit card companies to keep their personal credit cards available for continued use

by OYO Sports.

31.    Courts recognize that payment of lender fees may be necessary to obtain

postpetition financing and often approve payment of such fees. *See, e.g.,* Resolution Trust Corp.

v. Official Creditors' Comm. (In re Defender Drug Stores, Inc.), 145 B.R. 312, 316-19 (B.A.P.

9th Cir. 1992) (approving financing facility that included a lender "enhancement fee"); see also

In re Korea Chosun Daily Times, Inc., 337 B.R. 773, 783 (Bankr. E.D.N.Y. 2005) (noting that

postpetition financing arrangement may provide for payment of a commitment fee even if the

financing arrangement is not consummated).

32.    The terms of the postpetition financings also are fair and reasonable because they

facilitate the necessary administrative expenses of professionals.  The proposed DIP Orders

provide that (a) all administrative expenses will be funded in accordance with the Approved

Budget and (b) the security interests and superpriority administrative expense claims granted to

the LC and Mr. Hanssmann are subject to professional fees of OYO Sports and any official

committee (if any) formed in this case ("**Committee**").

33.    Accordingly, OYO Sports respectfully submits that the terms of the DIP Loan are

fair, reasonable and appropriate under the circumstances, and LC and Mr. Hanssmann should be

accorded the benefits of Bankruptcy Code Section 364(e) in respect of such loan.

C.    **OYO Sports Should be Authorized to Use Cash Collateral**

34.    Sections 363(c)(1) authorizes a debtor in possession to use property of the estate

in the ordinary course of business.  11 U.S.C. § 363(c)(1).  In order to use cash collateral,

however, one of two conditions must be satisfied: (1) each entity with an interest in the cash

collateral consents to its use, or (2) the court, after notice and a hearing, authorizes such use.  11

U.S.C. § 363(c)(2).

35.      Absent the ability to use Cash Collateral, OYO Sports would be deprived of a significant (albeit insufficient), source of liquidity, which would imperil the process.

36.      Here, the only entities with an interest in OYO Sports' cash collateral are LC and Mr. Hanssmann, and both consent to OYO Sports' use of its Cash Collateral.

### D.      The Automatic Stay Should be Modified on a Limited Basis

37.      The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to (a) permit OYO Sports to grant the security interests and liens described above and to perform such acts as may be reasonably requested to assure the perfection and priority of such security interests and liens and (b) implement the terms of the proposed Interim Order and Final Order.  In OYO Sports' business judgment, the stay modification request is fair and reasonable under the circumstances.  Accordingly, OYO Sports requests that the Court grant such relief.

### E.      Interim Approval of the DIP Agreements is Necessary to Prevent Immediate and Irreparable Harm

38.      Bankruptcy Rules 4001(b) and (c)(2) provide that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code section 364 may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(c)(2).

39.      Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one (21) days immediately following the filing date. Fed. R. Bankr. P. 6003.  Immediate

and irreparable harm would result if funding authority is not granted on an interim basis.  OYO

Sports clearly has an immediate need to obtain access to liquidity under the DIP Agreements.

OYO Sports, therefore, submits that the relief requested in this Motion is necessary to avoid

immediate and irreparable harm to OYO Sports, as described herein, and that Bankruptcy Rule

6003 has been satisfied.

40.     Accordingly, OYO Sports respectfully requests that the Court schedule and

conduct a preliminary hearing on the Motion and (a) authorize OYO Sports, from the entry of the

Interim Order until the Final Hearing, to obtain credit and factor its receivables under the terms

contained in the DIP Agreements and to utilize Cash Collateral, and (b) schedule the Final

Hearing.

## WAIVER OF BANKRUPTCY RULES 4001(a)(3)

41.     Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an

automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days

after the entry of the order, unless the court orders otherwise."  While it is not clear that

Bankruptcy Rule 4001(a)(3) applies (the termination of the stay in the proposed DIP Orders is

pursuant to an agreement under Bankruptcy Rule 4001(d), and not pursuant to a motion pursuant

to Bankruptcy Rule 4001(a)(1)), nevertheless, to the extent that this Order is subject to

Bankruptcy Rule 4001(a)(3), the proposed DIP Orders provide that they are effective

immediately and not stayed.

## NOTICE

42.     Notice of this motion has been provided to the parties in accordance with MLBR

4001-2(b).  OYO Sports submits that, in light of the nature of the relief requested, no other or

25

further notice need be given, and requests that the Court limit notice to the parties set forth in that rule.

## EMERGENCY DETERMINATION REQUESTED

43.    Pursuant to MLBR 9013-1(g), emergency determination is appropriate where, as here, the movant seeks "relief earlier than three (3) days after the motion for relief is filed."  To avoid immediate and irreparable harm resulting if OYO Sports is unable to obtain the needed liquidity from the transactions described above, OYO Sports requests that the Court consider this Motion on an emergency basis at the earliest opportunity on the Court's docket.

WHEREFORE, OYO Sports prays that the Court

d.    allow this Motion on an interim and final basis as set forth above,

e.    enter the orders attached as Exhibits A, B and J authorizing OYO Sports to obtain postpetition financing and use cash collateral on an interim basis to avoid irreparable harm to OYO Sports and its bankruptcy estate,

f.    Schedule a final hearing on this Motion, and

g.    Grant OYO Sports such other and further relief to which it may be entitled.

Respectfully submitted,

Dated:  July 30, 2017                     OYO SPORTS, INC.,
                                          By its proposed attorneys,


/s/ Jeffrey D. Sternklar_____
Jeffrey D. Sternklar (BBO #549561)
JEFFREY D. STERNKLAR LLC
26th Floor
225 Franklin Street
Boston, Massachusetts 02110
Tel:     (617) 396-4515
Cell:    (617-733-5171

26

Fax:     (617) 507-6530
Email: jeffrey@sternklawlaw.com

**CERTIFICATE OF SERVICE**

I, Jeffrey D. Sternklar, hereby certify that on the 31st day of July, 2017, I caused copies of the

foregoing Motion to be served on the parties identified in MLBR 4001-2(b) by first class mail, postage

prepaid, and on the following parties by electronic mail:

- **Richard King**     USTPRegion01.WO.ECF@USDOJ.GOV
- **Peter N. Tamposi**     peter@thetamposilawgroup.com, Judy@tlgnh.com (counsel to Martin Hanssmann)
- **Herbert Weinberg**     hweinberg@jrhwlaw.com, bmessina@jrhwlaw.com,herbweinberglaw@gmail.com (counsel to Oyotoyo, Inc.)
- **Valerie Batner Peo**   vbatnerpeo@buchalter.com (counsel to Liquid Capital Exchange, Inc.)

/s/ *Jeffrey D. Sternklar*
Jeffrey D. Sternklar